UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY PATRICK BUSH,

Plaintiff,

v.                                                    CASE No. 8:12-CV-1945-T-24TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

Defendant.

_____

REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

_____

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was fifty years old at the time of the administrative hearing and who has an eighth grade education, has worked primarily as a heavy equipment mechanic (Tr. 254). He filed a claim for supplemental security income payments, alleging that he became disabled due to "[d]egenerative knees & legs, back, mental, [d]epression and [a]nxiety" (Tr. 253). The claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "degenerative disc disease of cervical spine with protrusions at C5-6 and C6-7; degenerative disc disease of lumbar spine with disc bulges; status post arthroscopy with meniscus repair; and bipolar disorder" (Tr. 23). The law judge concluded that these impairments restricted the plaintiff to the following light work (Tr. 25):

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and walk for up to 6 hours in an 8-hour workday and sit for up to 2 hours in an 8-hour workday. No operation of foot controls. The claimant cannot climb, crawl, kneel or crouch. The claimant may occasionally balance and stoop. The

> claimant can have no exposure to hazards such as moving machinery and unprotected heights. Due to a mental impairment, the claimant is limited to no more than three to four step tasks.

The law judge determined that these limitations prevented the plaintiff from returning to past work (Tr. 31). However, based upon the testimony of a vocational expert, the law judge found that jobs exist in significant numbers in the national economy that the plaintiff can perform, such as cafeteria worker, industrial inspector, and production worker (Tr. 31-32). Accordingly, the law judge found that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on three grounds (Doc. 13, p. 3). None of the contentions has merit.

The plaintiff contends first that the law judge erred in making his credibility finding. This claim is frivolous.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry

v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge finds that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 25). He even cited Landry (id.). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed in detail the plaintiff's testimony in his decision (Tr. 26). After considering the plaintiff's testimony, along with the medical and non-medical evidence, the law judge restricted the plaintiff to a range of light work (Tr. 25).

In his credibility determination, the law judge, in accordance with the pain standard, expressly declined to credit fully the plaintiff's subjective complaints of pain. Specifically, the law judge stated (Tr. 26):

> [T]he claimant's statements as to the frequency, intensity, and duration of symptoms are inconsistent with the evidence of record and cannot be fully credited. The objective medical evidence does not confirm the severity of the alleged pain, nor does the weight of the medical and non-medical evidence demonstrate the presence of an impairment that reasonably could be expected to produce pain and functional limitation to the degree alleged by the claimant.

In support of his credibility determination, the law judge gave the following lengthy and compelling explanation (Tr. 28-30):

> The claimant's allegations of severity and limitation have not been accepted as entirely credible for several reasons. The most significant of which is the fact that the claimant was observed

in a cooperative disability investigation (CDI) on June 22, 2009. (Exhibit 21E). In this investigation, the claimant was observed to be functionally "unimpaired." The investigator observed the claimant walking about his yard, driving, getting in and out of his vehicle, balancing on one leg, leaning into his vehicle, carrying lawn equipment and walking briskly and unassisted. This is significant because contemporaneous to the investigation the claimant presented to treating physicians and consultative examiners walking with a cane, limping and generally evidencing an inability to ambulate effectively unassisted.

Moreover, the investigator interviewed two individuals who knew the claimant well. Both witnesses reported that they were unaware that the claimant had significant medical problems. Witness #1 stated that he/she knows the claimant "very well" and stated that there is "absolutely nothing physically wrong" with the claimant and he/she had witnessed the claimant performing yard work for approximately an hour a few days prior to the interview. Further, the witness stated that he/she had never seen the claimant use a cane and the claimant did not appear to have trouble walking. The witness stated that the claimant did not appear to have problems with his extremities or his back and that the claimant's "only disability is he doesn't like to work."

Witness #2 also stated that he/she had known the claimant for many years. The witness stated that the claimant did not appear to have any significant medical problems and was not limited in his ability to engage in normal physical activities. The

witness stated that he had never witnessed the claimant using a cane and had frequently observed the claimant engaged in yard work and other physical activities.

Also diminishing the credibility of the claimant's allegations, the claimant has made some unsupported claims. For example, the claimant stated that he sees things that are not there, telling Dr. [Shaukat] Chowhardi that he experienced hallucinations once [sic] week and reported to Dr. [Thomas G.] Trimmer that he once saw a "space ship." However, his treating psychiatrist noted that the claimant does not experience hallucinations.

Likewise, the claimant reports that he is unable to engage in physical activity such as yard work yet the CDI investigator observed the claimant attempting to fix and use a weed trimmer. The witnesses reported that they had also observed the claimant engaging in yard work and other physical activity. Further, this calls the claimant's testimony that he cannot lift anything heavier than a gallon of milk into greater question. Moreover, the claimant and his wife testified that recently the claimant had attempted to fix his father's riding lawnmower.

Additionally, the claimant has evidenced a tendency to over exaggerate his symptoms. For example, in June 2009 the claimant presented at the emergency room complaining of chest pain with radiation into his arm. The claimant professed to be "scared" and concerned by the severity of the pain in his [chest]. Yet, during a stress test, the claimant abruptly stopped walking the treadmill

after 1 minute 22 seconds complaining of back and knee pain. Further, the claimant claimed to be unable to complete a range of motion test of his knees on July 20, 2009 because of pain. When juxtaposed against the claimant's unimpaired walking as observed by the investigator in May 2009, these assertions appear suspect.

In addition, the claimant has testified that he uses a cane and presented to doctor's appointments and consultative examinations in April, June and July of 2009 using a cane. The claimant testified that he uses the cane whenever he walks for more than a short distance and that without it he is unable to balance. Yet, in the CDI investigation conducted in May of 2009, the claimant was observed walking briskly and effectively without a cane. He was observed balancing on one leg and leaning into the front driver's seat of his car several times. The claimant did not appear to limp, wobble or lose his balance. Further, the CDI witnesses reported that they had never observed him using a cane or have difficulty walking.

Lastly, the claimant's earning record demonstrates a very sporadic work history and he has only worked at substantial gainful activity level for three of the last fifteen years. Therefore, because the claimant has made unsupported allegations, has been observed to engage in activity he claims he is unable to perform, and he has a very poor work history I find that the claimant's allegations are not credible to the extent that they are inconsistent with the residual functional capacity detailed above.

In response, the plaintiff points to a statement submitted by plaintiff's lawyer regarding conversations he had with the two witnesses (Doc. 13, p. 4). That statement, at most, seeks to diminish the opportunities the witnesses had to observe the plaintiff (Tr. 314). However, the statement does not refute or contradict the information contained in the report from the investigator and the witnesses. Accordingly, the law judge could, and did, reasonably rely upon that information.

The plaintiff also quibbles with other aspects of the law judge's credibility determination (Doc. 13, p. 4). Those unpersuasive comments do not warrant discussion, and they certainly do not compel a different credibility finding.

It is remarkable that in light of the law judge's extended explanation for his credibility finding, the plaintiff even challenged that finding. Moreover, the fact that he made it his first issue reflects negatively on his two subsequent issues.

Furthermore, the plaintiff has not bothered to develop the other two arguments by citing to evidence in the record. Significantly, the scheduling Order required the plaintiff to support any discrete challenge to

the law judge's decision "by citations to the record of the pertinent facts" (Doc. 12, p. 2). The plaintiff has not satisfied this requirement for either his second or third issues. For example, the plaintiff asserts that "the evidence in the record establishes that the Claimant is unable to sustain work activity" (Doc. 13, p. 6). However, he does not support that assertion with any citation to evidence in the record. It is, of course, not the court's responsibility to scour the record to craft some argument supporting his conclusory assertion. Consequently, this assertion, and all other unsupported contentions, are properly deemed abandoned.

With respect to his second issue, which is that the law judge failed to give due weight to medical opinions, the plaintiff at least referred to statements by the law judge concerning medical opinions (id.). Those references will be addressed.

The plaintiff makes a cursory challenge to the law judge's handling of an opinion by Dr. Hafiz Rahman, a treating psychiatrist. Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when

the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge explained that he was discounting Dr. Rahman's opinion for the following reasons (Tr. 30):

> Dr. Rahman opined that the claimant has the capacity to work within his mental impairments but then will suddenly quit. He also stated that the claimant is not able to sustain work activity because he takes "large amounts of medications" for his physical problems. I give this opinion little weight because Dr. Rahman appears to have based his opinion on subjective statements by the claimant regarding the severity of his physical impairments, however Dr. Rahman is a psychiatrist. I find that the claimant's allegations regarding the limiting effects of his physical impairments are not credible and therefore I give little weight to Dr. Rahman's opinion. However, I do give great weight to Dr. Rahman's opinion that the claimant can manage his own funds as that is consistent with the medical evidence of record and the consultative examiner's findings.

The plaintiff makes no attempt to show that the evidence compelled the law judge to give substantial weight to Dr. Rahman's opinion. Thus, the plaintiff does not even cite to Dr. Rahman's opinion. Significantly,

-13-

the opinion is conclusory (Tr. 364-65), which as indicated, is a sufficient basis for discounting it. Further, the plaintiff did not cite to Dr. Rahman's treatment notes or to any other evidence in the record. Consequently, any contention that the evidence compelled the law judge to accept Dr. Rahman's opinion should be deemed abandoned. Similarly, the plaintiff's unsupported and conclusory assertion that "there is no evidence to counter the opinions and findings of the Claimant's treating physicians" should also be considered abandoned.

On this issue, the plaintiff essentially quotes the law judge's statements regarding Dr. Rahman's opinions and then asserts that the law judge substituted his own opinion for that of Dr. Rahman (Doc. 13, p. 6). That assertion is meritless.

In the first place, the law judge discounted Dr. Rahman's opinions because they were based upon the plaintiff's subjective complaints, and the law judge found that those complaints were not credible. Thus, the law judge was not coming to some conclusion based upon the medical evidence, but was evaluating the plaintiff's credibility. In addition, with respect to Dr. Rahman's statement that the plaintiff "takes large amounts of

medications," the plaintiff testified at the hearing that he only takes over-the-counter medications (Tr. 69).

Furthermore, even if the law judge was reaching a conclusion based upon the medical evidence, that would not amount to substituting his opinion for the medical experts. Rather, he would simply be carrying out his assigned responsibilities as administrative fact-finder. Thus, it is his duty to weigh and evaluate the medical evidence in determining whether the plaintiff is disabled. 20 C.F.R. 416.927.

The plaintiff also makes a contention relating to the law judge's handling of an opinion by Gerald Mussenden, Ph.D., an examining psychologist. The plaintiff asserts (Doc. 13, p. 6):

> Likewise, Judge Messina also cited to the opinion and findings of examining source, Dr. Gerald Mussenden, Ph.D.: "The claimant also presented walking with a cane and Dr. Mussenden stated it was 'obvious' that the claimant had 'serious difficulties' walking without it." (R-28). In the case of Dr. Mussenden, Judge Messina did not state how much weight he afforded this opinion. This is error.

This argument does not challenge the psychologist's assessment of the plaintiff's mental status. This is understandable because Dr. Mussenden

assessed the plaintiff with a Global Assessment of Functioning (GAF) score of 67 (Tr. 494), which indicates only mild mental functional limitations.[3]

Rather, the plaintiff complains that the law judge did not accept Dr. Mussenden's comments that the plaintiff presented walking with a cane and that it was obvious that the plaintiff had serious difficulties walking without it. Those comments, however, were clearly outside the area of the psychologist's expertise and did not constitute an expert opinion. Moreover, in his credibility determination, the law judge clearly indicated that the reports by treating physicians and consultative examiners that the plaintiff needed a cane were not credible (Tr. 29).

In short, with respect to the purported issue that the law judge failed to give appropriate weight to treating and examining sources, the only argument even minimally articulated concerned the law judge's comments about Dr. Rahman and Dr. Mussenden. For the reasons stated, the law judge did not err in connection with those matters.

---

[3]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships" (id.).

The plaintiff's final contention is that the law judge erred in determining the plaintiff's residual functional capacity (Doc. 13, p. 7). This contention should be rejected because, in violation of the scheduling Order, it is not developed at all.

The plaintiff asserts that the residual functional capacity found by the law judge does not contain all of the plaintiff's functional limitations. However, the plaintiff does not indicate what functional limitations should have been included in the residual functional capacity finding but were not. Moreover, the plaintiff has not cited to any evidence in the record which would compel the law judge to find additional functional limitations. Consequently, this undeveloped and unsupported contention is baseless.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain any reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: APRIL 29, 2013

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).